1
2
3
4
5
6                   UNITED STATES DISTRICT COURT
7              FOR THE EASTERN DISTRICT OF CALIFORNIA
8
9
10
11
     J & J SPORTS PRODUCTIONS, INC.,        No.  2:11-cv-2440 GEB AC
12
                     Plaintiff,
13
          v.                                ORDER AND
14
     HUMBERTO LEON SANCHEZ, JR.,            FINDINGS & RECOMMENDATIONS
15
                     Defendant.
16

17          Pending before the Court is plaintiff's renewed motion for default judgment against

18   defendant Humberto Leon Sanchez, Jr., individually and d/b/a Discoteca Sanchez, located at 1

19   South Wilson Way, Stockton, California 95205 ("the establishment").  The Court has determined

20   that this matter shall be submitted on the papers and accordingly the date for hearing shall be

21   vacated.  E.D. Local Rule 230.  Upon review of the motion and the supporting documents, and

22   good cause appearing, THE COURT FINDS AS FOLLOWS:

23                   FACTUAL AND PROCEDURAL BACKGROUND

24          The procedural history of this case differs from that typically seen by this Court on similar

25   matters.  On September 15, 2011, an international distributor of sports and entertainment

26   programming filed a complaint against defendant[1], identified as "an owner, and/or operator,

27   _____

28   [1] Two other individuals—Rafik Algazali and Khalid Salim—were initially named but later
     voluntarily dismissed by plaintiff.  See ECF No. 12.

                                    1

1  and/or licensee, and/or permittee, and/or person in charge, and/or an individual with dominion,

2  control, oversight and management of the establishment," alleging that the latter unlawfully

3  intercepted and exhibited a live broadcast of a prizefight program entitled "'200 Celebrate and

4  Dominate': Shane Mosley v. Sergio Mora" ("the Program") in the establishment for commercial

5  advantage without obtaining a sublicense from plaintiff for its use, in violation of the

6  Communications Act, 47 U.S.C. § 605, the Cable Communications Policy Act, 47 U.S.C. § 553,

7  and state law.  The First Amended Complaint, the operative pleading in this case, alleges

8  defendant exhibited the Program on September 18, 2010.  ECF No. 6.

9      Plaintiff brings the following claims: (1) a violation of 47 U.S.C. § 605 (Unauthorized

10  Publication or Use of Communications) alleging that defendant knowingly intercepted, received,

11  and exhibited the Program for purposes of direct or indirect commercial advantage or private

12  financial gain; (2) a violation of 47 U.S.C. § 553 (Unauthorized Reception of Cable Services)

13  based upon the same allegations; (3) a claim for conversion alleging that defendant tortiously

14  obtained possession of the Program and wrongfully converted it for his own benefit; and (4) a

15  violation of the California Business & Professions Code § 17200, et. seq.

16      In the amended pleading, plaintiff seeks $110,000 in statutory damages as well as

17  attorneys' fees and costs for Count I; $60,000 in statutory damages, as well as attorneys' fees and

18  costs for Count II; compensatory, exemplary, and punitive damages, as well as attorneys' fees and

19  costs for Count III; and restitution, declaratory relief, injunctive relief, and attorneys' fees for

20  Count IV.

21      The summons and complaint were served on defendant by personal service on February

22  24, 2012.  ECF No. 17; Fed. R. Civ. P. 4(e)(2); Pacific Atlantic Trading Co. v. M/V Main

23  Express, 758 F.2d 1325, 1331 (9th Cir. 1985) (default judgment void without personal

24  jurisdiction).  Defendant, appearing through counsel, filed an Answer on April 4, 2012.  ECF No.

25  18.  Defendant then attempted to settle this matter several times, but his settlement offer was

26  ultimately rejected by plaintiff.  See David S. White Decl. ¶¶ 4-6, ECF No. 25 at 6-7.  Due to

27  plaintiff's rejection of the settlement offer, counsel for defendant filed a motion to withdraw due

28  to defendant's inability to continue to pay attorneys' fees.  See Mot. to Withdraw as Counsel at 4,

2

1   ECF No. 25.  This motion was granted by the Honorable Garland E. Burrell, Jr., on October 1,

2   2012, and this matter was referred to the then-assigned magistrate judge pursuant to Local Rule

3   302(c)(21).  ECF No. 26.

4         Since proceeding in pro per, defendant has failed to participate in this case, including

5   failing to appear at a status conference before the then-assigned magistrate judge, see ECF No.

6   33; failing to follow the magistrate judge's order to "provide to plaintiff's counsel a phone

7   number at which defendant can be reached so that settlement discussions may be facilitated," see

8   ECF No. 34; failing to file a Pretrial Conference Statement, see ECF No. 39; and failing to

9   respond to Judge Burrell's Order to Show Cause why sanctions should not be imposed, ECF Nos.

10  39-40.  On December 5, 2013, Judge Burrell sanctioned defendant for these failures, ordering that

11  defendant's Answer be stricken and default be entered by the Clerk of the Court.  ECF No. 40.

12  Default was entered on the same day.

13        On April 24, 2014, plaintiff filed an application for default judgment.  ECF No. 43.  That

14  application was denied without prejudice on June 30, 2014 due to plaintiff's failure to provide

15  supporting documentation consistent with the allegations made in the first amended complaint.

16  See ECF No. 49.

17        The instant renewed motion for default judgment and supporting papers were served by

18  mail on defendant.  ECF No. 50-2 at 3.  Defendant did not file an opposition to the renewed

19  motion for entry of default judgment.  Plaintiff seeks an entry of default judgment in the amount

20  of $111,600 ($10,000 for statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); $100,000

21  for enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); and $1,600 for conversion).

22                                    LEGAL STANDARD

23        Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party

24  against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend

25  against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not

26  automatically entitle the plaintiff to a court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans,

27  238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25

28  (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments).  Instead,

the decision to grant or deny an application for default judgment lies within the district court's sound discretion. <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

<u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily disfavored.  <u>Id.</u> at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages.  <u>TeleVideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing <u>Geddes v. United Fin. Group</u>, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); <u>see also</u> <u>Fair Housing of Marin v. Combs</u>, 285 F.3d 899, 906 (9th Cir. 2002).  Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  <u>Cripps v. Life Ins. Co. of N. Am.</u>, 980 F.2d 1261, 1267 (9th Cir. 1992) (<u>citing</u> <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388 (9th Cir. 1978)); <u>accord</u> <u>DIRECTV, Inc. v. Huynh</u>, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law" (citation and quotation marks omitted).); <u>Abney v. Alameida</u>, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim.").  A party's default conclusively establishes that party's liability, although it does not establish the amount of damages.  <u>Geddes</u>, 559 F.2d at 560; <u>cf.</u> <u>Adriana Int'l Corp. v. Thoeren</u>, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the defaulting party).

////

////

////

4

DISCUSSION

A.     The Eitel Factors

    1.     Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, plaintiff would potentially face prejudice if the court did not enter a default judgment.  Absent entry of a default judgment, plaintiff would be without another recourse for recovery.  Accordingly, the first Eitel factor favors the entry of default judgment.

    2.     Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the
                      Sufficiency of the Complaint

The undersigned considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together because of the relatedness of the two inquiries.  The undersigned must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

Plaintiff seeks entry of default judgment on its claim brought pursuant to 47 U.S.C. § 605(a).  Plaintiff's inability to allege the precise nature of the intercepted transmission in this case, which is largely due to defendants' failure to defend themselves in the action, raises a question regarding the scope of 47 U.S.C. § 605(a) and the sufficiency of plaintiff's claim under that provision.  The Federal Communications Act prohibits, among other things, commercial establishments from intercepting and broadcasting radio communications to its patrons.  See 47 U.S.C. § 605(a).  In relevant part, 47 U.S.C. § 605(a) states:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.  No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.  No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such

communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

The Ninth Circuit Court of Appeals has determined that satellite television signals are covered communications under 47 U.S.C. § 605(a).  DIRECTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008).  The scope of section 605(a) is less clear with respect to transmissions intercepted from a cable system, which are expressly covered under 47 U.S.C. § 553(a).  Section 553(a) states, in relevant part:  "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C. § 553(a)(1).

Here, plaintiff has not alleged whether the transmission that defendant intercepted was from a cable system or a satellite television signal.  At a minimum, plaintiff's first amended complaint and evidence support a conclusion that defendant intercepted, without authorization, a transmission of the Program and broadcast it to its patrons.  Plaintiff essentially concedes that its amended complaint and the record contain no allegations or evidence substantiating the nature of the transmission that was intercepted by defendant.  Plaintiff argues, however, that although it was unable to allege the precise means of transmission in this case (i.e., transmission over a cable system or satellite broadcast), it "should not be prejudiced" given defendant's failure to appear or defend himself in this action.  Pl.'s Memo. of P. & A. in Supp. of Renewed Motion for Default J. at 8.  The undersigned agrees with plaintiff that under the circumstances of this case, where plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of defendant's failure to appear or defend itself in this action, plaintiff should not suffer the resulting prejudice.  Thus, insofar as the merits of plaintiff's statutory claims and the sufficiency of its pleadings under the Eitel factors are concerned, the amended complaint and record before the undersigned favor entry of default judgment.

3.      Factor Four: The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F. Supp. 2d at

1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal.

2003).  Here, plaintiff seeks statutory damages of $110,000 for the willful violation of 47 U.S.C.

§ 605.  This amount represents the maximum amount plaintiff would be permitted to recover

under the statute, including enhanced damages.  In addition, plaintiff seeks compensatory and

punitive damages for defendant's tortuous conversion of plaintiff's property.  Plaintiff notes

defendant would have been required to pay only $1,600 to broadcast the Program at the

establishment, but plaintiff asserts nominal damages have proven insufficient to combat piracy

and that defendant therefore should be required to pay the statutory maximum.  Thus, plaintiff

seems to concede that amount of damages requested is not proportional to defendant's conduct.

Given the substantial amount of money at stake, this factor could weigh against the entry

of default judgment.  See, e.g., Joe Hand Promotions v. Streshly, 655 F. Supp. 2d 1136 (S.D. Cal.

2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); J &

J Sports Productions. v. Cardoze, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010) ("a large sum

of money at stake would disfavor default damages," such as damages totaling $114,200); see also

Board of Trustees of the Sheet Metal Workers v. Vigil, 2007 WL 3239281, at *2 (N.D. Cal. Nov.

1, 2007) ("default judgment is disfavored if there were a large sum of money involved"); but see J

& J Sports Productions v. Hernandez, 2010 WL 1980186, at *4 ("the statutes involved

contemplate such an award under certain circumstances," and the factor did not weigh against

default judgment).  As discussed below, however, the Court declines to recommend judgment in

the amount requested.  Consequently, the factor does not weigh against plaintiff.

4.     Factor Five: The Possibility of a Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court

with well-pleaded allegations supporting its statutory claims and affidavits in support of its

allegations.  Here, the Court may assume the truth of well-pleaded facts in the amended complaint

(except as to damages) following the clerk's entry of default and, thus, there is no likelihood that

any genuine issue of material fact exists.  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226

F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken

as true after the court clerk enters default judgment, there is no likelihood that any genuine issue

1  of material fact exists."); <u>accord</u> <u>Philip Morris USA, Inc.</u>, 219 F.R.D. at 500; <u>PepsiCo, Inc.</u>, 238

2  F. Supp. 2d at 1177.

3      5.      Factor Six: Whether the Default Was Due to Excusable Neglect

4      Upon review of the record before the Court, the undersigned finds that the default was not

5  the result of excusable neglect.  <u>See</u> <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177.  Plaintiff personally

6  served the defendant with the summons and amended complaint.  Moreover, plaintiff served

7  defendant by mail with notice of its renewed application for default judgment.  Despite ample

8  notice of this lawsuit and plaintiff's intention to seek a default judgment, defendant has failed to

9  participate in this action.  Thus, the record suggests that defendant has chosen not to defend this

10  action, and not that the default resulted from any excusable neglect.  Accordingly, this <u>Eitel</u> factor

11  favors the entry of a default judgment.

12      6.      Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure

13          Favoring Decisions on the Merits

14      "Cases should be decided upon their merits whenever reasonably possible."  <u>Eitel</u>, 782

15  F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing

16  alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action.

17  <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177; <u>see also</u> <u>Craigslist, Inc. v. Naturemarket, Inc.</u>, 694 F.

18  Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010); <u>ACS Recovery Servs., Inc. v. Kaplan</u>, 2010 WL

19  144816, at *7 (N.D. Cal. Jan. 11, 2010) (unpublished); <u>Hartung v. J.D. Byrider, Inc.</u>, 2009 WL

20  1876690, at *5 (E.D. Cal. June 26, 2009) (unpublished).  Accordingly, although the undersigned

21  is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy

22  would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the

23  entry of default judgment.

24      Upon consideration of the <u>Eitel</u> factors, the undersigned concludes that plaintiff is entitled

25  to the entry of default judgment against defendant and will make a recommendation to that effect.

26  What remains is the determination of the amount of damages to which plaintiff is entitled.

27  B.  <u>Terms of Judgment</u>

28      After determining that a party is entitled to entry of default judgment, the court must

1   determine the terms of the judgment to be entered.  Considering plaintiff's briefing and the record

2   in this case, including the affidavits and declarations submitted by plaintiff, the undersigned

3   concludes that plaintiff is entitled to an award of statutory damages in the amount of $5,000 as a

4   result of defendant's unlawful interception and broadcast of the Program, and will recommend the

5   same.

6          Pursuant to section 605, a court may award statutory damages of "not less than $1,000 or

7   more than $10,000" for violation of the Federal Communications Act, and may also award

8   enhanced damages of up to $100,000 if the "violation was committed willfully and for purposes

9   of direct or indirect commercial advantage or private financial gain."  47 U.S.C. §

10  605(e)(3)(C)(i)(II), (e)(3)(C)(ii).

11         Here, plaintiff seeks a judgment in the amount of $111,600.  Plaintiff's application for

12  default judgment and proposed order indicate that this sum consists of $110,000 for a violation of

13  47 U.S.C. § 605(e)(3)(B)(iii) and (e)(3)(C)(ii), and $1,600 as compensatory damages arising from

14  defendant's act of conversion.

15         In this case, plaintiff's investigator provided evidence that the establishment, which has a

16  capacity of 100 patrons, was showing the Program on two television sets to 9 people.  Affiant

17  Renewed Decl., ECF No. 50-3; Supp. Decl. of Gary Gravelyn ¶¶ 5-6, ECF No. 50-4.  Defendant's

18  establishment is not large, and there is no evidence of a repeat violation or additional egregious

19  circumstances.  The investigator reported that he did not pay a cover charge for entry on the night

20  in question.  There is no evidence before the Court of any promotion by defendant that the fight

21  would be shown at the establishment.  There is also no evidence before the Court that a special

22  premium on food and drink was being charged at the establishment on the night of the fight or

23  that the establishment was doing any greater level of business on the night the fight was shown

24  than at any other time.  Indeed, the affiant's declaration describes the establishment as a music

25  store with pool tables.  Affiant Renewed Decl., ECF No. 50-3.  Finally, plaintiff has presented no

26  evidence to the Court suggesting that the defendant is a repeat broadcast piracy offender.

27  Balancing these facts with the widespread problem of piracy and the need for an award sufficient

28  to deter future piracy, the undersigned will recommend an award of statutory damages in the

1    amount of $5,000.  On the record before the Court, the undersigned does not find that this case

2    merits an award of enhanced damages.

3            Plaintiff also seeks actual damages for defendant's alleged tortious act of conversion in

4    the amount of $1,600, which consists of the fee that the defendant would have had to pay to

5    plaintiff in order to lawfully broadcast the Program through a contractual sublicense.  The

6    undersigned will not recommend an award of damages with respect to plaintiff's conversion

7    claim.  The statutory damages provisions at issue serve not only a deterrent function, see J & J

8    Sports Prods. v. Orellana, 2010 WL 1576447, at *3 (N.D. Cal. Apr. 19, 2010) (unpublished), but

9    also a compensatory function, which is evidenced by provisions that permit the award of statutory

10   damages or actual damages in a civil action.  See 47 U.S.C. § 605(e)(3)(C)(I); 47 U.S.C. §

11   553(c)(3)(A)(i).  Here, the recommended award of statutory damages in the amount of $5,000

12   sufficiently compensates plaintiff, and this case does not present a set of circumstances where an

13   additional award might be warranted.  Accordingly, the undersigned will recommend that

14   plaintiff be awarded no damages on its conversion claim.

15           Finally, although the prayer for relief in the amended complaint and the application for

16   default judgment indicate that plaintiff seeks the award of costs and attorneys' fees, the

17   application for default judgment contains no argument or evidence in support of such a request.

18   Accordingly, the undersigned will not recommend the award of costs or attorneys' fees.

19           Accordingly, IT IS HEREBY ORDERED that the August 20, 2014 hearing on plaintiff's

20   motion for default judgment is vacated; and

21           IT IS HEREBY RECOMMENDED that:

22           1.  Plaintiff's renewed motion for default judgment (ECF No. 50) be granted;

23           2.  The court enter judgment against defendant on plaintiff's claims brought pursuant to

24   47 U.S.C. § 605(a);

25           3.  The court award statutory damages in an amount of $5,000.00 to plaintiff; and

26           4.  This case be closed.

27           These findings and recommendations are submitted to the United States District Judge

28   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

1  after being served with these findings and recommendations, any party may file written

2  objections with the court and serve a copy on all parties.  Such a document should be captioned

3  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

4  within the specified time may waive the right to appeal the District Court's order.  Turner v.

5  Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir.

6  1991).

7  DATED: August 14, 2014

8  _____

9  ALLISON CLAIRE
   UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28